**Dana L. HASHEY**

v.

**Stephen A. TRIMM**

and

**William D. Chapman**

Supreme Judicial Court of Maine.

Submitted on Briefs March 6, 1990.

Decided March 29, 1990.

Edward W. Gould, Gross, Minsky, Mogul & Singal, Bangor, for plaintiff.

Orman G. Twitchell, Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, HORNBY and COLLINS, JJ.

WATHEN, Justice.

Defendants Stephen A. Trimm and William D. Chapman appeal from a judgment of the Superior Court (Penobscot County, *Chandler, J.*) entered on a referee's report ordering defendants to convey a piece of real estate to plaintiff Dana L. Hashey. Plaintiff claimed a right of first refusal on the real estate pursuant to an agreement with the deceased Erma Stone. On appeal, defendants argue that the referee erroneously concluded that the devisee of Erma Stone's real estate was bound by plaintiff's right of first refusal. We affirm the judgment.

In 1965, plaintiff entered into an agreement with Erma Stone providing him with a right of first refusal to purchase a piece of real estate located in Eddington. This agreement, which was to remain effective until March 1, 1990, was collateral to Stone's sale to plaintiff of an abutting piece of property. The agreement purported to bind Stone as well as "the representatives of her estate."

Erma Stone died in 1986. In 1988, defendant Trimm approached Wesley Archer, who was acting in a dual capacity as attorney for the estate and as broker for the property, with a $20,000 offer. In March, 1988, Trimm entered into a purchase and sale agreement with Ruby Ryder, sole devisee under Erma Stone's will, and personal representative of the estate. The purchase and sale agreement was expressly made subject to plaintiff's right of first refusal. Archer then sent a letter to plaintiff, dated April 5, informing him of the offer and giving him until April 25 to respond.

Shortly before April 25, plaintiff went to Archer's office and advised him of his intention to exercise his right of first refusal. When approximately a week later plaintiff informed Archer that he had obtained financing, however, Archer told him that he was too late and that his rights were now subordinate, to those of Trimm. Plaintiff obtained counsel.

On June 8, plaintiff's counsel contacted Archer and informed him that plaintiff had recorded his intent to exercise the right of first refusal in the Penobscot County Reg-

istry of Deeds. Archer responded by letter, suggesting that the transaction might still be open and recommending that plaintiff deposit the purchase price in a savings account. Plaintiff obliged and provided Archer with proof of deposit.

On June 30, Ruby Ryder, acting in her capacity as personal representative, executed a deed of distribution of the real estate to herself as devisee. On the same date she and her husband conveyed to defendants. Although the deed of distribution is not made subject to plaintiff's right of first refusal, both the deed to defendants and a later corrective deed are. At the time of conveyance, Archer represented orally that plaintiff's right of first refusal was no longer an issue.

Plaintiff brought this action for specific performance of his right of first refusal. By agreement, the case was tried to a referee pursuant to M.R.Civ.P. 53(b)(1). The Superior Court accepted the referee's report, entering judgment for plaintiff and ordering defendants to convey the property to him. Defendants now appeal.

Defendants argue that at the time Ruby Ryder conveyed the property to them she was acting in her individual capacity as devisee and that therefore she was under no obligation to convey the property to plaintiff. In support of this contention, defendants point to the language of the 1965 agreement, which reads in relevant part as follows:

> WHEREAS, the Buyer is desirous of having first option to buy all or part of the remaining abutting real estate (land and buildings, or any part of abutting land) of the Seller should she, her executors, administrators, or devisees decide to sell;
> NOW THEREFORE ... it is hereby mutually agreed and covenanted between the parties hereto, as follows:
> (1.) That at any time should the Seller, or the representatives of her estate, desire to sell the property ... the Buyer ... is to have first "refusal" or option to buy such premises....

While the second recital clause states that "the Buyer is desirous of having first op-

tion to buy ... should [Erma], her executors, administrators, *or devisees* decide to sell," the corresponding operative clause mentions only "the Seller, or the representatives of her estate." Defendants argue that the omission of the term "devisees" in the operative clause is critical.

Defendants have misinterpreted the referee's disposition of the case. The crucial legal conclusion was that, notwithstanding Archer's representation, "[plaintiff's] notice to Archer and personal attempts to consummate the transaction were timely" and sufficient to effectuate his right of first refusal. Thus, at the time of Ruby's conveyance to defendants plaintiff's right of first refusal had already vested. It was for this reason that the referee held that "by the terms of the conveyance to *them*, Trimm and Chapman are subject to the obligation to convey." Because defendants have not challenged this conclusion on appeal, we affirm the judgment.

The entry is:

Judgment affirmed.

All concurring.